## RUMBALL *v.* PUIG.[1]

### (*District Court, S. D. New York.* March 23, 1888.)

DEMURRAGE—LIABILITY OF CHARTERER—FAILURE TO FURNISH CLEARANCE PAPERS—CUSTOM AND USAGE.

A vessel's lay days expired on Saturday. Her loading was completed on Friday, but her clearance papers were not furnished by charterer until Monday afternoon, and the ship sailed Tuesday. The charter provided that charterer should be liable "for any detention of the vessel by his default" after the

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

expiration of the lay days. Evidence was given of the existence of a custom allowing a charterer one day after the loading is completed in which to furnish necessary papers, and charterer claimed that he was entitled to one day for furnishing papers after the expiration of the lay days. *Held*, that under the above clause of the charter a detention of clearance papers would render the charterer liable. *Held, further*, that no custom was proved, or would be sustained, allowing charterer more than one day after the loading is in fact completed, or until the end of the lay days, if that be later; and that a ship cannot be detained after her lay days have expired, without compensation, when the loading has been actually completed more than a day previous. Charterer was therefore held liable for one day's demurrage.

*Wilcox, Adams & Macklin*, for libelant.
*Ullo, Ruebsamen & Hubbe*, for respondent.

BROWN, J. The respondent chartered the libelant's bark Lillian, agreeing to pay $60 per day "for any detention of the vessel by his default" after the expiration of 15 lay days. The lay days expired on Saturday, August 31, 1887. It was the charterer's duty to furnish the master certain documents in order to enable her to procure her clearance, and sail for her Spanish port. Her loading was completed early on Friday. During Saturday repeated demands were made upon the respondent for the necessary documents. They were not furnished until Monday afternoon, just in time to clear at the custom-house, but not in season to make it practicable to sail until the next morning. Evidence was given of a general practice and understanding in accordance with a rule of the produce exchange that allows charterers one day after the loading is completed in which to furnish necessary papers and documents. The reason of this rule was stated to be that it is found generally impracticable to obtain the necessary bills and documents at the moment the loading is completed. There was no default in this case as respects any of the express clauses of the charter in regard to loading; and the charter stated nothing in regard to furnishing papers and documents. It cannot be doubted, however, that it was the charterer's duty to furnish these papers. The 15 lay days were for the purpose of loading. But the general clause giving demurrage was designed, I think, to bind the charterer for the neglect of any duty required of him to enable the vessel to sail.

For the respondent, it is claimed that he was entitled to one business day in which to furnish the ship's papers after the lay days had expired. That, however, is not the language of the produce exchange rules, nor, as it seems to me, its intention, where the loading is in fact completed before the lay days have expired. In some cases, where the time to complete loading is advertised, it is the practice to allow desired changes of cargo up to the last moment; and when that is done, the charterer perhaps should not be held in default, as respects a customary obligation, until he has had the customary additional day to comply with it. The proofs show in this case that the loading was entirely completed early on Friday. The bills of lading were then signed. There is no evidence that any more loading of the vessel was designed or expected. The produce exchange rule of itself has no binding force. But it may be re-

ferred to as an aid in understanding the custom testified to, and I do not think there is any custom different from that rule. Looking at all the evidence, I do not think there is proof of any custom that warrants more than the allowance of one additional day to furnish the ship's documents after the loading is in fact completed, or until the end of the lay days, if that be later; and that the ship cannot be detained after the lay days have expired without compensation when the loading has been actually and practically completed more than a day before. The reason of the custom and of the rule in that case fails, and it becomes unjust to the ship to enlarge the time, because that would be practically to extend the stipulated lay days without cause; and no such alleged custom could be sustained. I must hold the respondent, therefore, in default for not furnishing the ship's necessary documents on Saturday. As he had the whole of that day, however, in which to do it, the following day being Sunday, the ship could not have sailed until Monday morning. His delay kept her until Tuesday morning, and the libelant is therefore entitled to one day's demurrage, viz., $60, with interest and costs.